Robertson, Ch. J.
It is necessary, preliminarily in this case, to ascertain and determine the precise state in which the relation and obligations of the parties to this action to each other stood in May, 1863, after the plaintiff had accepted the iron plate bending machine made by the defend *292 ants, at their foundry and by their workmen, under his directions, pursuant to their mutual oral agreement Sf September previous. ' Part of the work to be delivered by the defendants under the sealed contract of August, 1862, was iron legs for the proposed derrick. A machine to bend them into shape, to be furnished by the plaintiff according to such agreement, was essential to the complete performance by the defendants of the work therein undertaken by them, within the time therein' specified, and its .delivery was therefore a condition precedent to such performance. The subsequent waiver by the defendants of the furnishing of that machine by the plaintiff by entering into a new contract, orally, in September, 1862, whereby they agreed to furnish such machine themselves, the plaintiff drawing plans for and superintending its construction, evidently to be employed in forming the legs for the proposed derrick, completely changed the nature of the contract between the parties. There is no evidence in the case, except from the written agreement of April, 1863, at whose cost such machine was to be. The plaintiff went on superintending the construction of such machine, and drawing patterns and plans for it, and the defendants had it in progress in their foundry until it was finished, in April, 1863, which was long after the four months of the first contract had expired. This was evidence of a waiver by both parties of the completion of the work within that time. But still further, the plaintiff* agreed by the instrument of April, 1863, himself to do part of the work undertaken by the defendants by that of August, 1862, which was to make the legs of the derrick, the latter merely furnishing iron plates for the purpose. This put the time of making them entirely under the plaintiff’s control, and effectually interfered with any fixed time for the completion of such work, which therefore was to be done with due diligence. Subsequently the plaintiff took some of the iron plates furnished by the defendants, converted them by the bending machine into legs for the derrick, attached them thereto, and accept- *293 . ed and used other parts of the work made by the defendants pursuant to the contract of August, 1862.
The original contract must, therefore, be considered as having been entirely abandoned in May, 1863, except so far as regarded the work to be done, and the prices to be paid for it, and in reference to so much of the former, as related to the legs of the derrick, unmanufactured iron plates were to be furnished by the defendants, but shaped into such legs by the plaintiff, instead of by themselves, thus taking them out of the former contract. There is, therefore, of course, no room for complaint by either party, as to the non-completion of the bending machine in time, the plaintiff having superintended its construction, and accepted and used it, when it was finished, and the defendants furnishing a workshop and workmen. So, too, in regard to the iron plates, actually furnished by the defendants, the plaintiff accepted and made use of them, and thereby waived any objection as to time, although, in consequence of the delays of the defendants, he refused to- receive any more.
The only serious claims of the plaintiff in this case, therefore, are for services in the defendants’ employment; for damages in being obliged to procure elsewhere the materials and parts of his derrick which the defendants neglected to furnish, and for bad workmanship in some of that which ■ they furnished, and the expense of rectifying it, and for injury by their delay in furnishing it in a reasonable time. There was no evidence in the case of any injury by the delay, as the government completed and accepted the derrick, and only withheld the last payment, because it had furnished part of the iron and caused part of the work to be done, which was to be deducted from the last installment.
The articles omitted to be supplied by the defendants were, iron plates for the derrick legs, boom rod suspensions, lateral boom rods, cast iron couplings and patterns for them, and'diagonal rods and rivets. The iron plates furnished by the plaintiff instead of those so omitted, weighed 30,000 pounds, for which he paid from five and a half to *294 nine cents per pound, and was only to pay, by the contract . of August, 1862, when converted into legs, nine cents per pound, from which was to be deducted the allowance of three cents to him for such conversion by the contract of April, 1863, making a difference of about one cent per pound of loss, or $300 in all. The lateral boom rods omitted weighed 1400 pounds, costing thirty cents a pound, on which there was a loss of twenty-one cents a pound, in all $291. The suspension boom rods omitted weighed 13,965 pounds, costing ten cents a pound, being a difference of one cent, and making a loss of $139.65. The cast iron couplings and patterns for them cost $85, whereas the cost, under the contract, would have been only $7.50, making a loss of $77.50. On the diagonal rods, weighing 2912 pounds, there was a difference and loss of about sixteen cents on each pound, or $465.92 in all.' The rivets cost twenty cents a pound for 60,000 pounds, making a loss of eleven cents per pound, and a difference of $660. All of such losses amount, together, to about $2475. Erom these is- to be deducted the value of the bending machine furnished by the defendants, being $830 Leaving a residue of over $1100.
The value of this claim of the plaintiff for extra work, caused by the insufficient work furnished'by the defendants, was from $3000 to $4000; whether this was a fair test of the inferior value of the articles furnished to that of those agreed for, is quite immaterial, as no exceptions were taken on the trial to any refusals to charge, and the jury were, therefore, at liberty to take that into consideration.
The plaintiff testified that the defendants agreed to pay him for his services in making drawings and superintending the work, and the jury passed upon that question. He also testified that such services were worth from $4000 to $5000 a year, and he was engaged eight months, being from $2700 to over $3300. The jury, therefore, might under the evidence, have brought in a verdict of nearly $9000 as damages for all the losses. of the plaintiff, whereas they only found $6000 damages. They must also be considered as *295 having passed upon the question of the plaintiff’s refusal to receive more plates after a delay of three months.
E. W. Dodge, for the appellants, defendants.
J. Townshend, for the respondent, plaintiff*.
I see no reason for interfering with the verdict. The new trial asked for must be refused, -with costs.
An order refusing a new trial was accordingly entered; from which the defendants appealed to the general term.
By the Court, Jones, J.
In this case it is not necessary to add much to the opinion delivered at special term, which I approve of.
A few observations may, however; be proper. The defendant claims that the plaintiff should not be allowed compensation .for services in superintending and furnishing plans, because under the contract he was to perform those services without charge.
Whether these services were covered by any contract, so that he was bound to perform them without compensation, was a question of fact for the jury. They have found in the negative, on conflicting evidence, and there is no reason for interfering with their' verdict.
Again, the defendants say that the plaintiff should recover no damages arising out of the unskillful performance of the work by the defendants’ workmen, because he gave directions and furnished the plans for the work, and superintended it, and, therefore, if the work was not properly done it was his own fault. And for the same reason it is claimed that if the work is improperly done the plaintiff is not entitled to compensation for giving directions, drawing plans and superintending, even if a valid contract to give a compensation therefor had been made. This depends on the solution of four questions.
Was the doing of the work improperly, the result of erro- • neous directions and plans given by the plaintiff? Or was *296 it the duty of the plaintiff, under the agreement under which • he claims compensation, to see that at every step the workmen followed his orders and plans, and performed the work properly, and used proper materials? Or was it confined simply to keeping such supervision over the work as to be • ready when his previous directions and plans had been carried out, apparently with proper workmanship and materials, then to give further directions and plans for future prosecution of the work ? ■ Or did the damage complained of result from improper workmanship, or the use of improper materials in any portion of the work that was superintended by the plaintiff?
If the 1st, 2d and 4th of these questions, or any one of them, be affirmatively answered, then the defendants’ proposition is correct; if they are all answered negatively, and the 3d is answered afiirmatively, then it is wrong.
These four questions were questions of fact for the jury. The claims of the defendants upon the subjects covered by them, it appears from the portion of the charge contained in the appeal papers, were presented in general terms to the jfiry. There is conflicting evidence on them, and the jury have answered the 1st, 2d and 4th, negatively, and the 3d affirmatively. Their verdict should not be disturbed.
Again, the defendants say that the plaintiff broke the contract on his part by not making payments as agreed. The evidence does not support this. The agreement was to make Jackson & Brother, the attorneys of the plaintiff, to make collections from the government so far as the payments became due under the contract.
Whatever difficulty'may have existed as to the second payment, it was waived by the parties.
The third payment was not countermanded until after the plaintiff had refused to continue the contract, which refusal the jury have decided to be justified.
Judgment affirmed, with costs.